IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-00029-01/06-CR-W-ODS |
| | ) | |
| JESSIE ANDREWS and | ) | |
| DARNEICE JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER AND OPINION GRANTING GOVERNMENT'S MOTION FOR AUTHORIZATION TO SEIZE FUNDS

Pending is the Government's motion for an order authorizing the seizure of funds it contends were forfeited by Defendants. The motion (Doc. # 445) is granted.

### I. BACKGROUND

This case arose from a shooting in September 2004. Police responded to the scene and discovered narcotics, firearms, and more than $70,000 in cash. These items were seized, and the State of Missouri instituted forfeiture proceedings in Jackson County Circuit Court pursuant to Missouri's Criminal Activities Forfeiture Act ("CAFA"). Continued investigation over the ensuing months culminated in the discovery of more guns and drugs, and the eventual indictment (on January 9, 2005) of six individuals on federal charges. Count XII sought forfeiture of all six defendants' interest in the cash found in September 2004.[1]

On January 13, 2005, Patrick W. Peters filed an answer and counterclaim on behalf of Darneice Johnson in the CAFA action. He also filed a Notice of Attorney Lien, designed to place a lien on the seized funds for his work in the CAFA action. The state

---

[1] Superseding Indictments were issued in February 2005 and August 2006, but the allegations of Count XII were largely unchanged.

court (the Honorable Thomas C. Clark) stayed the CAFA action pending the resolution of the federal criminal case.

In February 2005, Johnson retained Ray Sousley and Dan Ross to represent her in the federal case. In May 2005, Peters entered his appearance as Jessie Andrews' retained counsel. Shortly thereafter, Magistrate Judge Honorable Robert E. Larsen set a hearing for "[c]ounsel for defendants Jessie Andrews and Darneice [to] make a record regarding the resolution of a potential conflict of interest." Doc. # 45. The Minute Sheet from that hearing indicates Judge Larsen took up "the possible conflict of interest with Pat Peters as attorney for defendant Andrews in the federal case and Darneice Johnson in a state case. Ms. Johnson testified on the stand that she agreed that there was no conflict as to Mr. Peters' representation of defendant Andrews." Doc. # 51. No mention is made as to whether Andrews had any views on the topic; the transcript was not ordered or filed, but a transcript is unnecessary to resolve the matters currently pending.

On November 15, 2005, Andrews appeared in front of the Honorable Howard F. Sachs and changed his plea to guilty. A plea agreement was executed by the Government, Andrews, and Peters. As part of the plea agreement, Andrews agreed to forfeit his entire interest in the proceeds seized in September 2004 and to not contest the transfer of those funds to the United States.

On April 7, 2006, the State of Missouri asked Judge Clark to transfer the funds to the United States for forfeiture proceedings; Peters object to the transfer and, following a hearing on April 10, Judge Clark denied the State's request. Three days later, Johnson pled guilty and, like Andrews, agreed to forfeit her entire interest in the proceeds seized in September 2004 and to not contest the transfer of those funds to the United States.

On October 13, Judge Sachs issued a preliminary order of forfeiture. The undersigned sentenced Andrews on February 26, 2007, and made the order of forfeiture final as to Andrews. The undersigned sentenced Johnson on March 9, 2007, and made the forfeiture order final as to her as well.

On July 8, 2008, Judge Clark determined the CAFA Petition was not filed within the time limits required by statute and that Peters had a valid attorney lien. He ordered

that the entire fund be transferred to Peters.  Peters apparently moved the amount he believed he was owed from his trust account into his own account; approximately $35,000 remains in Peters' trust account.  The funds remain there pursuant to the parties' agreement and the Court's Order of November 10, 2008.  In the meantime, the Court appointed new counsel to represent Johnson and Andrews.  A hearing was held on December 12, 2008, at which time the Defendants disavowed any interest in the money and expressed their desire that Peters transfer their interests to the Government.  The Government contended (and still contends) it is entitled to the entire amount seized (plus accrued interest).  Peters contends the Government is not entitled to anything – including the funds he is holding for Johnson.

## I.  DISCUSSION

### A.  Preliminary Matters

There are a few matters that need to be addressed even though they do not directly further the Court's analysis of the issues.  First, some of the Government's arguments are predicated on Johnson's and Andrews' conduct and obligations.  The Court concludes they have done everything required of them by their plea agreements, there is no evidence they have done anything that violates their plea agreements, and there is nothing more that they can do to accomplish the Government's objectives.  Second, the Court notes the Government has "elected not to press further its contract law arguments" with respect to Peters – which is just as well, given that he was not a party to the plea agreements.

Finally, the Court harbors serious reservations about Peters' conduct in this matter.  While his representation of co-defendants on related matters in different proceedings was countenanced by Judge Larsen, any attorney undertaking such effort should know they are skirting on the edge of ethical boundaries.  More importantly, the dangers involved became more pronounced as events unfolded *after* Judge Larsen considered the matter, and should have caused Peters to reconsider the situation.  In

3

particular, by the time Andrews and Johnson agreed to the forfeiture of their interests, Peters should have known that the transfer of the funds to the Government would be seen as an important part of their compliance with the plea agreements. While he may have clever arguments as to why it was improper for the federal government to forfeit the property, it was not for him to decide whether his clients should waive those objections. In short, his own interest in the money created a potential conflict with his clients' interests in making sure their obligations under the Plea Agreement were fulfilled. Nonetheless, while fighting to keep the money out of federal court, he negotiated an agreement requiring his client to help the federal government attain it. The potential perils should have given Peters pause.

Even now, Peters has money that he posits belongs to Johnson. Johnson specifically directed Peters to deliver the money to the Government at least by December 8, 2008 – yet Peters continues to retain the money, arguing (against his client's wishes and interest) that the Court lacks the power to order the money be turned over to the Government.[2]

## B. The United States Has the Superior Interest in the Money

Peters' arguments are predicated on the differences between in rem and in personam jurisdiction. Most of Peters' arguments have been addressed in two related Eighth Circuit decisions issued in a case that involved Peters[3] and relies heavily on the distinction between a civil forfeiture and a criminal forfeiture as contemplated by the

---

[2]This creates either (1) great peril for Johnson or (2) a windfall for Peters. If Peters retains the money, it is a windfall in that he concedes it is not a part of what he is owed. Given that he cannot retain it, his only option is to give it to Johnson – and if she accepts it, she may be accused of breaching the plea agreement. At a minimum, Johnson would be obligated to give the money to the United States – which is exactly what Johnson has asked Peters to do on her behalf.

[3]One was decided in January 2006 and the other was decided in November 2007. Curiously, while the Government cites them extensively, Peters barely mentions them at all.

4

federal statutes.  A criminal forfeiture "differs slightly from traditional forfeiture law because it is an *in personam* proceeding against the defendant, not his property."  United States v. Timley, 443 F.3d 615, 628 (8th Cir.), cert. denied, 549 U.S. 889 (2006) ("Timley I").  This characteristic is what allows the Government to forfeit substitute property from the defendant if the original "forfeitable" property is no longer available.  See United States v. Hatcher, 323 F.3d 666, 673 (8th Cir. 2003) (discussing 21 U.S.C. § 853(p)); United States v. Vampire Nation, 451 F.3d 189, 202 (3d Cir. 2006).  This is also in contrast to a federal civil forfeiture proceeding, which is an *in rem* proceeding.  E.g., United States v. Dodge Cravan Grand SE, 387 F.3d 758, 760 (8th Cir. 2004).[4]  Thus, the Court's preliminary and final forfeiture orders did not violate the prohibition against multiple courts having jurisdiction over a res.

In any event, the funds are presently not in the state court's control.  "[W]here, as here, the state court has ordered the return of the *res* to the defendant, that court no longer has any, let alone exclusive, jurisdiction over the *res.*  Thus, once the *res* is returned to the defendant, the federal court is not barred from seeking to forfeit it."  Timley I, 443 F.3d at 628.  Judge Clark's decision did not (and could not) address whether the money was subject to federal forfeiture, so its decision regarding the State's compliance with CAFA is no bar to this Court's decision regarding forfeiture.  Id.

Finally, as an additional example of the conflicting roles Peters finds himself in, both Andrews and Johnson have waived any arguments regarding the propriety of this Court's orders.  Peters' standing to complain is questionable at best.  As a third party, Peters' only recourse is to ask this Court to determine the validity of his interest and its priority with respect to the Government's pursuant to 21 U.S.C. § 853(n).  United States

---

[4]CAFA was reformed by the Missouri Legislature to limit the practice of state law enforcement officers "handing off" seized property to allow federal authorities to seek forfeiture of property.  This practice allowed state law enforcement agencies to receive a portion of the forfeited proceeds, which would not have been allowed in a state forfeiture proceeding.  State v. Sledd, 949 S.W.2d 643, 646 (Mo. Ct. App. 1997).  There was also concern about the rampant practice of seeking forfeitures in situations where no criminal conduct was charged.  These concerns do not apply to a criminal forfeiture like the one involved in this case.

v. Timley, 507 F.3d 1125, 1129 (8th Cir. 2007) ("Timley II").  Peters has not availed himself of this opportunity, which is just as well because the effort would not be successful.

"There are two grounds on which to prevail at an ancillary hearing.  The claimant must either demonstrate priority of ownership at the time of the offense . . . , or that he subsequently acquired the property as a bona fide purchaser for value . . . ." Id. at 1130.  Peters' "third-party interest cannot defeat the federal forfeiture, since the government's interest in the property to be forfeited 'vests in the United States upon the commission of the act giving rise to the forfeiture.'" Timley I, 443 F.3d at 628 (quoting 21 U.S.C. § 853(c)).  "Peters third-party claim for attorney's fees . . . does not give him a legal right to money that was derived from a drug conspiracy that began before that date."  Id.; see also Timley II, 507 F.3d at 1130.

Peters is not a bona fide purchaser of value within the meaning of 21 U.S.C. § 853(n)6)(B).

> This defense consists of the following three elements: (1) the claimant has a legal interest in the forfeited property; (2) the interest was acquired as a bona fide purchaser for value; and (3) the interest was acquired at a time when the claimant was reasonably without cause to believe that the property was subject to forfeiture.

Timley II, 507 F.3d at 1130-31.  Peters cannot satisfy the third element, as he cannot claim to be reasonably without cause to believe that the money was subject to forfeiture when he knew, through representation of his clients, that the money was (1) the object of a CAFA proceeding in state court and (2) the object of a criminal forfeiture indictment in federal court.

III.  CONCLUSION

The money Peters purportedly holds for Johnson belongs to the Government. The money does not belong to Peters, Johnson has agreed to allow the money to be forfeited, Johnson has waived any objections she may have (and Peters lacks standing to raise them), and she has directed Peters to remit the funds to the Government.

The money Peters received from the seized proceeds as payment for legal work is also forfeitable. Under federal law, a criminal forfeiture proceeding is not an *in rem* proceeding, so it may proceed even if the property is in the custody and control of a state court. In any event, at the time of this Order, the money is not in the custody and control of a state court. Peters' interest in the money arose after the Governments, and he was not a bona fide acquirer for value.

IT IS SO ORDERED.

DATE: March 18, 2009

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT